**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| DERRICK SMITH, Individually and for Others Similarly Situated,<br><br>v.<br><br>EL SEGUNDO COAL COMPANY, LLC. | Case No. 1:25-cv-00335<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Derrick Smith (Smith) brings this class and collective action to recover unpaid wages and other damages from El Segundo Coal Company, LLC (El Segundo).

2. Smith worked for El Segundo as an open cut operator in its McKinley County, New Mexico mine.

3. El Segundo paid Smith and the other Hourly Employees (defined below) by the hour.

4. Like the other Hourly Employees, Smith regularly worked more than 40 hours a workweek.

5. But El Segundo does not pay Smith and the other Hourly Employees for all the hours they work.

6. Instead, El Segundo requires Smith and the other Hourly Employees to suit out in protective clothing and safety gear necessary to safely perform their job duties, gather other necessary supplies, and travel to their work location, while on El Segundo premises "off the clock."

7. And El Segundo requires Smith and the other Hourly Employees to travel from their work location to the "change out room," change out of and store their safety gear and protective clothing, and wash-up, while on El Segundo's premises "off the clock" (¶¶ 6-7, El Segundo's "off the clock policy").

8. But El Segundo does not pay Smith and the other Hourly Employees for this "off the clock" time before and after their shifts.

9. El Segundo's off the clock policy violates the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA) by depriving Smith and the other Hourly Employees of wages, including overtime wages for all hours worked, including overtime hours.

10. In addition to failing to pay Smith and the other Hourly Employees for all hours worked, El Segundo also fails to pay them overtime at the required premium rate for all overtime hours worked.

11. Specifically, El Segundo pays Smith and the other Hourly Employees non-discretionary bonuses that it does not include in their regular rates of pay for overtime purposes. (El Segundo's "bonus pay scheme").

12. El Segundo knows these non-discretionary bonuses must be, but are not, included in Smith's and the other Hourly Employees' regular rates of pay for overtime purposes.

13. El Segundo's bonus pay scheme violates the FLSA and NMMWA by depriving Smith and the other Hourly Employees of overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 a workweek.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over El Segundo because it is registered to do business in New Mexico and conducts substantial business activities in New Mexico, including employing Smith and the other Hourly Employees.

17. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District.

18. Specifically, El Segundo employed Smith and the other Hourly Employees pursuant to its off the clock policy and bonus pay scheme in this District.

**PARTIES**

19. Smith worked for El Segundo as an open cut operator in El Segundo's Mckinley County, New Mexico mine from approximately February 2022 through July 2024.

20. Throughout his employment, El Segundo classified Smith as non-exempt and paid him by the hour.

21. Throughout his employment, El Segundo subjected Smith to its off the clock policy and bonus pay scheme.

22. Smith brings this class and collective action on behalf of himself and other similarly situated El Segundo employees who were subject to El Segundo's off the clock policy and/or bonus pay scheme.

23. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly El Segundo employees who have worked during the last three years through final resolution of this action. (the "FLSA Collective Members").**

24. The putative class of similarly situated employees is defined as:

> **All hourly El Segundo employees who have worked in New Mexico (the "New Mexico Class Members").**

25. The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Hourly Employees."

26. El Segundo is a Delaware limited liability company headquartered in Saint Louis, Missouri.

27. At all relevant times, El Segundo transacted and conducted substantial business in

3

New Mexico.

28. El Segundo may be served through its registered agent: **CSC of Lea County, Inc., 732 E. Michigan Dr., Suite 500, Hobbs, New Mexico 88240**.

## FLSA COVERAGE

29. At all relevant times, El Segundo was an "employer" within the meaning of the FLSA. 29 § 203(d).

30. At all relevant times, El Segundo was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, El Segundo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. §203(s)(1).

32. At all relevant times, El Segundo had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33. At all relevant times, Smith and the other Hourly Employees were El Segundo's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, Smith and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

35. El Segundo operates the El Segundo coal mine in Mckinley County, New Mexico, which produced approximately 3.4 million tons of coal in 2023 and employs approximately 250

employees.[1]

36.   To meet its business objectives, El Segundo hires employees, like Smith and the other Hourly Employees.

37.   El Segundo uniformly classifies these employees as non-exempt and pays them by the hour.

38.   While exact job duties and locations may differ, Smith and the other Hourly Employees are all subject to El Segundo's same or similar policies—its off the clock policy and bonus pay scheme—for similar work.

39.   For example, Smith worked for El Segundo as an open cut operator in its El Segundo Mine from approximately February 2022 until July 2024.

40.   El Segundo classified him as non-exempt and paid him by the hour.

41.   Specifically, El Segundo paid Smith approximately $32 an hour.

42.   And Smith typically worked approximately 4 days a week for 12 hours a day (48 hours a workweek).

43.   Throughout his employment, El Segundo required Smith to record his "on the clock" hours via El Segundo's designated timekeeping system.

44.   Smith's job duties included operating open cut dump trucks and graders to transport coal and dirt throughout the mine and position the same for storage.

45.   Smith's job duties likewise included putting on his protective clothing and safety gear (including reflective and fire-retardant jumpsuit, steel toed boots, safety glasses, hard hat, ear protection, gloves), gathering required paperwork, and travelling from the change out room to his worksite, "off the clock," all while on El Segundo's premises.

---

[1] https://www.peabodyenergy.com/Operations/U-S-Mining/Western-Mining/El-Segundo-Mine (last visited March 31, 2025).

46. This "off the clock" work took Smith approximately 30 minutes each workday.

47. Smith could not perform his job duties in accordance with El Segundo's policies, procedures, and expectations without this protective clothing and safety gear and paperwork.

48. Smith could not safely perform his job duties in accordance with El Segundo's policies, procedures, and expectations without this protective clothing and safety gear and paperwork.

49. Indeed, much of the safety gear Smith must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 77, *et seq.*

50. The donning of protective clothing and safety gear, gathering of paperwork, and travel to his worksite within the mine are therefore integral and indispensable work duties for Smith.

51. Likewise, El Segundo required Smith to travel back to the change out room, remove and store his safety gear and protective clothing and wash up each day after his shift, on its premises, all "off the clock" and without compensation.

52. This took Smith approximately 30 minutes each workday.

53. Smith could not perform his job duties in accordance with El Segundo's policies, procedures, and expectations without traveling back to the change out room to remove and store this safety gear and protective clothing and wash up each workday.

54. Smith could not safely perform his job duties in accordance with El Segundo's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

55. Traveling back to the change out room, removal and storage of safety gear and protective clothing, and washing up each workday are therefore integral and indispensable work duties for Smith.

56. But under its off the clock policy, El Segundo did not compensate Smith for the same.

6

57. Thus, under its off the clock policy, El Segundo failed to pay Smith wages, including overtime wages, for all his hours worked, and overtime hours worked during workweeks in which he worked in excess of 40 hours, in violation of the FLSA and NMMWA.

58. Smith and the other Hourly Employees perform their jobs under El Segundo's supervision and use materials, equipment, and technology that El Segundo approves and supplies.

59. El Segundo requires Smith and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

60. At the end of each pay period, Smith and the other Hourly Employees receive wages from El Segundo that are determined by common timekeeping methods that El Segundo selects and controls.

61. But, just as with Smith, El Segundo fails to pay the other Hourly Employees for all their hours worked.

62. Indeed, El Segundo uniformly subjects the other Hourly Employees to the same or similar off the clock policy it imposed on Smith.

63. Specifically, just as with Smith, El Segundo requires them to put on their safety gear (including reflective and fire-retardant jumpsuit, steel toe boots, safety glasses, hard hat, head lamp, ear protection, and gloves), gather paperwork, and travel to their worksite within the mine, "off the clock," while on El Segundo's premises.

64. And El Segundo requires them to travel back to the change out room, remove and store their safety gear and protective clothing, and wash up after their shifts, likewise, "off the clock" and without compensation.

65. And like Smith, much of the safety gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 77, *et seq*.

66. But, like Smith, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and after their scheduled shifts.

67. And, just as with Smith, El Segundo does not pay the other Hourly Employees for this work they perform "off the clock" before and after their scheduled shifts, on El Segundo's premises.

68. And, just as with Smith, these job duties take the other Hourly Employees approximately an hour each workday.

69. El Segundo fails to exercise its duty as Smith's and the other Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that El Segundo does not want performed.

70. And El Segundo knows, should know, or recklessly disregards whether Smith and the other Hourly Employees routinely perform work "off the clock," without compensation, before and after their scheduled shifts.

71. Thus, El Segundo requires, requests, suffers, and/or permits Smith and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

72. Despite accepting the benefits, El Segundo does not pay Smith and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

73. Thus, under El Segundo's off the clock policy, Smith and the other Hourly Employees are denied wages for the compensable work they perform "off the clock" before and after their scheduled shifts during, including overtime wages during workweeks in which they work more than 40 hours, in violation of the FLSA and NMMWA.

74. Further, El Segundo pays Smith and the other Hourly Employees according to its bonus pay scheme.

75. Specifically, El Segundo pays them non-discretionary bonuses, including safety and production bonuses.

76. El Segundo knows these bonuses are required to be but are not included in Smith's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates.

77. As a result, El Segundo fails to pay Smith and the other Hourly Employees overtime at a rate of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek, in violation of the FLSA and NMMWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

78. Smith brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

79. Like Smith, the other Hourly Employees are victimized by El Segundo's off the clock policy and bonus pay scheme.

80. Other Hourly Employees worked with Smith and indicated they were paid in the same manner, performed similar work, and were subject to El Segundo's off the clock policy and bonus pay scheme.

81. Based on his experience with El Segundo, Smith is aware El Segundo's off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

82. The Hourly Employees are similarly situated in the most relevant respects.

83. Even if their job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime at the required premium rates.

84. The Hourly Employees are held together by El Segundo's off the clock policy and bonus pay scheme, which systematically deprive Smith and the other Hourly Employees of wages, including required overtime wages, for all hours worked, including those in excess of 40 a workweek.

85. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

86. El Segundo's failure to pay these employees overtime wages at the required premium rate—based on all remuneration—results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

87. El Segundo's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

88. El Segundo's records likewise show how and how much it paid the Hourly Employees.

89. The back wages owed to Smith and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

90. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to El Segundo's records, and there is no detraction from the common nucleus of liability facts.

91. Therefore, the issue of damages does not preclude class or collective treatment.

92. Smith's experiences are therefore typical of the experiences of the other Hourly Employees.

93. Smith has no interest contrary to or in conflict with the other Hourly Employees that would prevent class or collective treatment.

94. Like each Hourly Employee, Smith has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

95. Smith and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

96. Smith retained counsel with significant experience in complex class and collective action litigation.

97. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

98. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and El Segundo will reap the unjust benefits of violating federal and New Mexico law.

99. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

100. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and El Segundo.

101. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

102. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

103. Among the common questions of law and fact are:

   a. Whether El Segundo's off the clock policy failed to compensate the Hourly Employees for all hours worked.

   b. Whether El Segundo's off the clock policy deprived the Hourly Employees of wages, including overtime wages when they worked more than 40 hours in a week;

   c. Whether El Segundo's off the clock policy and/or bonus pay scheme deprived the Hourly Employees of overtime wages at the required rate—based on all remuneration—for all hours worked over 40 in a workweek;

       d.      Whether El Segundo's failure to pay its Hourly Employees overtime wages as required by the NMMWA under its off the clock policy and/or bonus pay scheme constituted a continuing course of unlawful conduct.

       e.      Whether El Segundo's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

       f.      Whether El Segundo's violations were willful.

104. As part of its regular business practices, El Segundo intentionally, willfully, and repeatedly violated the FLSA with respect to Smith and the other Hourly Employees.

105. El Segundo's off the clock policy deprived Smith and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

106. There are many similarly situated Hourly Employees who have been denied overtime wages for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it.

107. The Hourly Employees are known to El Segundo, are readily identifiable, and can be located through El Segundo's business and personnel records.

### EL SEGUNDO'S VIOLATIONS WERE WILLFUL

108. El Segundo knew it employed the Hourly Employees.

109. El Segundo knew it was subject to the FLSA's overtime provisions.

110. El Segundo knew Smith and the other Hourly Employees were its non-exempt employees entitled to overtime wages.

111. El Segundo knew its Hourly Employees were entitled to be paid for each hour worked.

112. El Segundo knew the FLSA required it to pay non-exempt employees, including Smith and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

113. El Segundo knew Smith and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

114. El Segundo knew it paid the Hourly Employees according to its off the clock policy.

115. El Segundo knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" and without pay.

116. El Segundo knew it required the Hourly Employees to don and doff safety gear and protective clothing and wash-up, "off the clock."

117. El Segundo controlled the Hourly Employees' work procedures.

118. El Segundo knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with El Segundo.

119. El Segundo knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with El Segundo.

120. El Segundo knew the Hourly Employees routinely performed this daily, required "off the clock" work for El Segundo's predominant benefit.

121. In other words, El Segundo knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering paperwork, traveling to their worksite within the mine, and washing-up) "off the clock" and without compensation.

122. El Segundo knew it paid Smith and the other Hourly Employees bonuses.

123. El Segundo knew these bonuses were not included in Smith' and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

124. And El Segundo knew the FLSA required it to pay Smith and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

125. El Segundo knew Smith and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

126. Thus, El Segundo knew, should have known, or recklessly disregarded whether it failed to pay Smith and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

127. El Segundo's failure to pay Smith and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

128. El Segundo knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful off the clock policy and bonus pay scheme that deprived Smith and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

129. Smith brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

130. El Segundo violated, and is violating, the FLSA by employing non-exempt employees, such as Smith and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

131. El Segundo's unlawful conduct harmed Smith and the other Hourly Employees by depriving them of the overtime wages they are owed.

132. Accordingly, El Segundo owes Smith and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

133. Because El Segundo knew or showed reckless disregard for whether its bonus pay scheme and off the clock policy violated the FLSA, El Segundo owes Smith and the other FLSA Collective Members these wages for at least the past 3 years.

134. El Segundo is also liable to Willimas and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

135. Finally, Smith and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>COUNT II</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA**
**(NEW MEXICO CLASS)**

136. Smith brings his NMMWA claim on behalf of himself and the other New Mexico Class Members pursuant to FED. R. CIV. P. 23.

137. The conduct alleged in this Complaint violates the NMMWA. N.M.S.A. §§ 50-4-20, *et seq*.

138. At all relevant times, El Segundo has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-1; *see also* N.M.S.A. § 50-4-21.

139. At all relevant times, El Segundo has been an "enterprise in business" within the meaning of the NMMWA.

140. At all relevant times, Smith and each New Mexico Class Member have been covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

141. At all relevant times, El Segundo has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

142. The NMMWA requires employers, like El Segundo, to pay employees, including Smith and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times employees' regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in any one 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

143. Smith and the Hourly Employees are entitled to overtime wages under the NMMWA for all hours worked in excess of 40 hours in a 7-day workweek.

144. El Segundo violated, and is violating, the NMMWA by employing non-exempt employees (Smith and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a 7-day workweek, including those worked "off the clock" before and after their shifts. *See* N.M.S.A. § 50-4-22(D).

145. El Segundo's improper practices at issue (off the clock policy and bonus pay scheme) were, and are, part of a continuing course of conduct, entitling Smith and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

146. El Segundo's unlawful conduct harmed Smith and the New Mexico Class Members by depriving them of the premium overtime wages they are owed.

147. Accordingly, Smith and the other New Mexico Class Members are entitled to recover their unpaid overtime in an amount equal to 1.5 times their regular rates of pay for all hours worked in excess of 40 in a seven-day workweek; "an additional amount equal to twice the unpaid … wages"

as treble damages, N.M.S.A. § 50-4-26(C); and all reasonable attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## JURY DEMAND

148. Smith demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Smith, individually, and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action and certifying the putative New Mexico class pursuant to FED. R. CIV. P. 23;

c. An Order designating Smith and his counsel to represent the interests of the putative New Mexico class;

d. An Order pursuant to Section 16(b) of the FLSA finding El Segundo liable for unpaid overtime wages due to Smith and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding El Segundo liable to Smith and the other Hourly Employees for all unpaid overtime wages owed under the NMMWA, and treble damages in an amount equal to two times their unpaid overtime wages;

f. A Judgment against El Segundo awarding Smith and the other Hourly Employees all their unpaid overtime compensation, other damages, and penalties available under the FLSA and NMMWA;

g. An Order awarding attorney's fees, costs, and expenses;

  h. Pre- and post-judgment interest at the highest applicable rates; and

  i. Such other and further relief as may be necessary and appropriate.

Dated: April 4, 2025         Respectfully submitted,

              **JOSEPHSON DUNLAP LLP**

              By: */s/ Michael A. Josephson*
                Michael A. Josephson
                Texas Bar No. 24014780
                Andrew W. Dunlap
                Texas Bar No. 24078444
                11 Greenway Plaza, Suite 3050
                Houston, Texas 77046
                Phone: 713-352-1100
                Fax: 713-352-3300
                mjosephson@mybackwages.com
                adunlap@mybackwages.com

                Richard J. (Rex) Burch
                Texas Bar No. 24001807
                **BRUCKNER BURCH PLLC**
                11 Greenway Plaza, Suite 3025
                Houston, Texas 77046
                Phone: 713-877-8788
                Fax: 713-877-8065
                rburch@brucknerburch.com

              **ATTORNEYS FOR SMITH AND THE HOURLY EMPLOYEES**